# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESCO INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. |
| v. | ) |
| | ) |
| ORRSTOWN BANK, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES WESCO INSURANCE COMPANY, by and through its attorneys Lewis Brisbois Bisgaard & Smith, LLP, and for its Complaint for Declaratory Judgment against ORRSTOWN BANK, states as follows:

### INTRODUCTION

1. This lawsuit is an action for declaratory judgment pursuant to 28 U.S.C. §2201, for the purpose of resolving an actual controversy between Wesco Insurance Company ("Wesco") and Orrstown Bank ("Orrstown") arising under a Commercial Insurance policy issued by Wesco to Orrstown.

2. In this action, Wesco seeks a declaration that it has no obligation to pay certain fees and expenses Orrstown incurred in connection with a data breach under the Network Security and Privacy Liability First Party Insuring Agreement in the Wesco Policy issued to Orrstown.

### PARTIES, JURISDICTION AND VENUE

3. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

4. Plaintiff, Wesco, is organized under the laws of the State of Delaware, with its principal place of business located in New York, New York.

5. Defendant, Orrstown, is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business located in Shippensburg, Pennsylvania.

6. Orrstown seeks reimbursement from Wesco for certain fees and expenses Orrstown has incurred, which total $630,480.82.

7. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Wesco, on the one hand, and Defendant on the other hand; and (b) the amount in controversy, substantially exceeds $75,000.

8. Venue is appropriate under 28 U.S.C. § 1391 because many of the acts – *i.e.*, the making of the insurance contract at issue and the underlying data breach– which form the basis of this action occurred in the Middle District of Pennsylvania.

## FACTUAL BACKGROUND

**A.   The Wesco Policy**

9. Wesco issued Commercial Policy No. WDO 1388187 01 to Orrstown, effective 7/14/16 to 7/14/19 (the "Policy"). A true and correct copy of the Wesco Policy is attached hereto as **Exhibit A.** The Wesco Policy contains a Network Security and Privacy Liability Coverage Part, which has a sublimit of $1.25 million for **Crisis Mitigation Expenses**, subject to a $100,000 Retention.

10. The Network Security and Privacy Liability Coverage Part contains a First Party Insuring Agreement, which provides, in relevant part:

> **SECTION I – FIRST PARTY INSURING AGREEMENTS**
>
> A.   **CRISIS MITIGATION EXPENSE** – The **Insurer** will indemnify the **Company** for **Crisis Mitigation Expenses** the **Company** incurs within one (1) year of the reporting of the incident or suspected incident to the

2

Insurer, because of a **Wrongful Act** taking place prior to the expiration of the **Policy Period** and reported to the **Insurer** during the **Policy Period** or Extended Reporting Period (if exercised).

11. The Policy contains the following pertinent Definitions:

**Crisis Mitigation Expenses** is defined to mean the following reasonable expenses incurred by the **Insured**, in excess of the **Insured's** normal operating expenses and, with the prior written approval of the **Insurer**, to protect the reputation of the **Insured**, or to investigate and to take corrective action to mitigate a **Network Security Event** including:

1. the cost to hire a security expert or forensic investigator to determine the existence and cause of any **Network Security Event** and to determine the persons whose **Personally Identifiable Information** was accessed or acquired without their authorization;

2. the cost of preparing and sending any individual notifications required by **Breach Notification Law** to persons whose **Personally Identifiable Information** was accessed or acquired without their authorization;

3. if applicable, to examine the **Insured's** indemnification rights and obligations under any written contract with a **Service Provider**;

4. the cost to engage a qualified expert to restore authorized access to the **Company's Computer System** after a **Denial of Service** attack;

5. the cost to change account numbers and related information, including the reissuance of debit, credit, and ATM cards for those persons who have been directly affected by the incident;

6. the cost to provide up to one (1) year of credit monitoring, **Identity Monitoring**, credit-related remediation, and other identity theft financial recovery services to persons residing in the United States, whose **Personally Identifiable Information** was accessed or acquired without their authorization;

7. the cost of a public relations consultancy to mitigate any actual or potential negative publicity;

8. fees, costs or expenses associated with the purchase of an identity fraud insurance policy specifically designed to provide reimbursement of identity fraud related expenses, or similar coverage if such similar coverage is available as part of credit monitoring services, to benefit persons whose **Personally Identifiable Information** was accessed or acquired without their authorization; and

9. the cost of providing **Call Center Services** to affected and non-affected customers.

\*\*\*

**Network Security Event** means, in relevant part:

1. unauthorized access to, use of, tampering with or theft of electronic data containing **Personally Identifiable Information** on the **Company's Computer System**, or the failure to prevent such unauthorized access, use, tampering or theft;

\*\*\*

whether any of the foregoing is a specifically targeted attack or a generally distributed attack.

\*\*\*

**Wrongful Act** means any actual or alleged **Wrongful Network Security Act**, **Wrongful Privacy Act** or **Wrongful Media Communications Act**.

**Wrongful Network Security Act** means any actual or alleged act, error, or omission by an **Insured** or any person or organization for whom the **Insured** is legally liable that results in a **Network Security Event**.

B. **The Data Breach**

12. In or about October 2017, an employee of Orrstown replied to a Phishing email and inadvertently gave his email login credentials to an unknown third party. That unknown third party accessed the employee's email account and adjusted it to forward all emails sent and received by the employee to an external third party account (the "Breach").

13. On July 22, 2018, prior to reporting the Breach to Wesco, Orrstown, through its counsel Sidley & Austin, entered into an engagement agreement with KPMG, LLP ("KPMG") to perform Cyber Response Services and Digital Responder Services in connection with the Breach. A true and correct copy of the KPMG engagement letter is attached hereto as **Exhibit B**.

14. Orrstown did not obtain written approval from Wesco prior to hiring KPMG or incurring KPMG's fees and expenses.

15. On July 23, 2018, Orrstown first notified Wesco of the Breach.

16. On or about July 24, 2018, Orrstown, through its counsel Sidley & Austin, hired Kroll Information Assurance, LLC ("Kroll") to perform data breach notification and monitoring services in connection with the Breach. Although the engagement agreement with Kroll is dated August 8, 2018, the initial invoice from Kroll states that it is for work performed from July 24, 2018 – August 29, 2018. A true and correct copy of the Kroll engagement letter is attached hereto as **Exhibit C**. A true and correct copy of the Kroll invoices are attached hereto as **Group Exhibit D**.

17. Orrstown did not obtain written approval from Wesco prior to hiring Kroll or incurring Kroll's fees and expenses.

18. Thereafter, Orrstown submitted invoices from KPMG and Kroll to Wesco for payment. A true and correct copy of the KPMG invoice is attached hereto as **Exhibit E**. See also, **Group Ex. D.**

19. The KPMG invoice totals $395,601.29.

20. The Kroll invoices total $234,879.53.

21. Orrstown has requested reimbursement from Wesco for the KPMG and Kroll invoices. Wesco contends it has no obligation to indemnify Orrstown for the KPMG or Kroll fees/expenses. As a result, an actual controversy exists between Wesco, on the one hand, and Orrstown, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## COUNT I – DECLARATORY JUDGMENT
### (Definition of Crisis Mitigation Expenses – No Prior Written Approval)

22. Wesco incorporates by reference paragraphs 1-20 above as if fully stated herein.

23. The definition of **Crisis Mitigation Expenses** in the Policy is limited to certain reasonable expenses incurred by the **Insured** with the prior written approval of the **Insurer**.

24. Orrstown did not seek or obtain written approval from Wesco prior to hiring KPMG or incurring KPMG's fees and expenses.

25. The KPMG fees and expenses, therefore, do not qualify as **Crisis Mitigation Expenses**, and consequently are not covered under the Policy.

26. Orrstown did not seek or obtain written approval from Wesco prior to hiring Kroll or incurring Kroll's fees and expenses.

27. As a result, the Kroll fees and expenses do not qualify as **Crisis Mitigation Expenses**, and are not covered under the Policy.

28. Accordingly, Wesco has no obligation to indemnify Orrstown for the KPMG fees/expenses or the Kroll fees/expenses incurred in connection with the Breach.

WHEREFORE, Plaintiff, WESCO INSURANCE COMPANY, respectfully requests this Honorable Court to declare and adjudge the controversy as follows:

A. Declare that Wesco has no duty to indemnify Orrstown for the KPMG fees and expenses incurred in connection with the Breach;

B. Declare that Wesco has no duty to indemnify Orrstown for the Kroll fees and expenses incurred in connection with the Breach;

C. Grant any other relief that this Honorable Court deems just and equitable under the circumstances.

## COUNT II – DECLARATORY JUDGMENT
### (Definition of Crisis Mitigation Expenses – Reasonableness)

29. Wesco incorporates by reference paragraphs 1-20 above as if fully stated herein.

30. The definition of **Crisis Mitigation Expenses** in the Policy is limited to certain reasonable expenses incurred by the **Insured**.

31. The fees and expenses billed by KPMG are not reasonable, either in whole or in part. To the extent the KPMG fees and expenses are not reasonable, they do not fall within the definition of **Crisis Mitigation Expenses** and are not covered by the Policy.

32. The fees and expenses billed by Kroll are not reasonable, either in whole or in part. To the extent the Kroll fees and expenses are not reasonable, they do not fall within the definition of **Crisis Mitigation Expenses** and are not covered by the Policy.

33. Wesco has no obligation to indemnify Orrstown for any KPMG or Kroll fees and expenses that do not fall within the definition of **Crisis Mitigation Expenses**.

WHEREFORE, Plaintiff, WESCO INSURANCE COMPANY, respectfully requests this Honorable Court to declare and adjudge the controversy as follows:

A. Declare that Wesco has no duty to indemnify Orrstown for the KPMG fees and expenses incurred in connection with the Breach;

B. Declare that Wesco has no duty to indemnify Orrstown for the Kroll fees and expenses incurred in connection with the Breach;

C. Grant any other relief that this Honorable Court deems just and equitable under the circumstances.

Dated: April 16, 2019

                        Respectfully submitted,

                        LEWIS BRISBOIS BISGAARD & SMITH, LLP

                        By: /s/ Eric J. Bronstein, Esquire
                             Eric J. Bronstein, Esquire
                             550 E. Swedesford Road, Suite 270
                             Wayne, PA 19087
                             Tel: 215.977.4100
                             Eric.Bronstein@lewisbrisbois.com

                        *Attorneys for Plaintiff,*
                        *Wesco Insurance Company*